**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**MARIE ANN R.**

                              **Plaintiff,**                              **22-CV-06153-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

---

### DECISION AND ORDER

        As set forth in the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #12.

### BACKGROUND

        On October 21, 2014, plaintiff, at the age of 37, protectively applied for a

period of Title II disability and disability insurance benefits, as well as for Title XVI

supplemental security income. Dkt. #7, pp. 263-277.[1] Plaintiff alleged she was disabled

due to a non-improving blood clot in her left leg; lumbar spondylolysis with outside bilateral

radiculopathy; and depression, with an onset date of June 3, 2013. Dkt. #7, pp. 263, 294.


        Plaintiff's applications were denied on February 11, 2017. Dkt. #7, pp. 167-

186. Plaintiff requested a hearing, Dkt. #7, pp. 197-198, and a hearing was held on

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

February 15, 2017 before Administrative Law Judge ("ALJ") Connor O'Brien. Dkt. #7, pp. 37-99. Plaintiff was represented by counsel and testified, as did a vocational expert.

The ALJ issued an unfavorable decision on July 19, 2017. Dkt. #7, pp. 17-30. The Appeals Council denied review on June 5, 2018. Dkt. #7, pp. 7-11. Plaintiff filed an action in this Court on August 23, 2018, Dkt. #7, pp. 771-753, and on March 26, 2020, the Court issued a Decision and Order remanding the case for further administrative proceedings. Dkt. #7, pp. 754-763.

Specifically, the Court held that the ALJ's rejection of the opinions of plaintiff's treating physician, Dr. Stacy Hom, was conclusory because she failed to cite specific evidence in support of her assessment. Dkt. #7, pp. 760-761. The Court also held that the ALJ improperly discounted Dr. Hom's opinions because they were provided on "checkbox forms." Dkt. #7, pp. 761-762.

On remand, the same ALJ held a telephone hearing on January 14, 2021. Dkt. #7, pp. 644-690. Plaintiff, again represented by counsel, testified that she is 5' 6 ½" tall and weighs 230 pounds. Dkt. #7, p. 657. She also testified that she graduated from high school and can read and write English. *Id.*

Plaintiff testified that two grandchildren live with her. Dkt. #7, p. 658. She has a driver's license but only drives about 15 minutes away from home because she cannot sit for very long. Dkt. #7, p. 659. At the time of the hearing, she was receiving

unemployment insurance, and she testified that she told the unemployment office that she was willing to work, but cannot sit or stand for too long, and could probably try to do part-time work. Dkt. #7, p. 660.

In 2020, plaintiff started a job at the Salvation Army working 4-5 hours a day. Dkt. #7, p. 660. However, she only worked for about three weeks because she could not do the standing. Dkt. #7, p. 661. From 2017 to 2019, plaintiff cared for her mother, who had cancer. Dkt. #7, pp. 661-662. Plaintiff testified that she cooked dinner for her mother and helped her shower. *Id.* Plaintiff, her two kids, and her brother did her mother's housekeeping, and plaintiff would bring her mother's laundry to her home to do. Dkt. #7, p. 662.

Plaintiff testified that in 2015, she worked as a companion aide, and prior to that, she worked in a call center. Dkt. #7, pp. 662. At the call center, she could stand up and walk a little because her headset had a six-foot cord. Dkt. #7, p. 664. She also worked at AT&T handling incoming calls, and she could stand up sometimes depending on how busy it was. Dkt. #7, p. 665.

Plaintiff further testified that she previously worked part-time for four years at Goodwill, as well as for six months at Hampton Inn as a night auditor. *Id.* At Goodwill, she was a cashier and worked the floor; at Hampton Inn, she worked the front desk and completed tasks on the computer. Dkt. #7, pp. 666-667.

The ALJ next heard testimony from Dr. Olivia Bajor, an impartial medical expert.[2] Dr. Bajor testified that she had reviewed plaintiff's medical records and plaintiff has degenerative disc disease of the lumbar spine and a history of deep vein thrombosis ("DVT") in her lower extremities. Dkt. #7, p. 670. However, Dr. Bajor testified that, given improvements in plaintiff's DVT, it was more appropriately characterized as veinous insufficiency. Dkt. #7, p. 671.

Dr. Bajor also testified that she believed that plaintiff could lift ten pounds occasionally and five pounds frequently. Dkt. #7, p. 677.

Next, the ALJ heard from Joseph Young, a vocational expert ("VE"), who opined as to the Dictionary of Occupational Titles ("DOT") classifications for plaintiff's past work. Dkt. #7, pp. 680-681.

The ALJ asked the VE to consider an individual with plaintiff's age, education, and background who can sit for no more than two hours at a time before taking five minutes to change positions/stand/walk for five minutes, for up to six hours a day[3]; can stand and walk for two hours; can lift up to ten pounds occasionally and five pounds

---

[2] The transcript of this hearing states this medical expert's name as "Dr. Glazer," but this appears to be a phonetically based transcription error. The ALJ's decision, as well as the parties' briefs, refer to this witness as Dr. Bajor. In addition, the record contains a medical expert resumé for Dr. Olivia Bajor, Dkt. #7, pp. 1150-1151, which she testified accurately represented her qualifications. Dkt. #7, pp. 668-669.

[3] The need to move around after two hours of sitting was related to plaintiff's history of DVT. Dkt. #7, pp. 676-677.

frequently; can stand for 30 minutes at a time; and can walk for 15 minutes at a time. Dkt. #7, pp. 682-683.

The VE testified that such an individual would be able to perform plaintiff's past work of companion, telemarketer, and night auditor, with a reduction in available job numbers due to the sit/stand requirement. Dkt. #7, pp. 683-684. The VE testified that the number of available jobs were: companion, 100,000; telemarketer, 45,000; and night auditor, 2,125. Dkt. #7, p. 684.

The ALJ then adjourned the hearing and stated that she would schedule a supplemental hearing after obtaining plaintiff's recent medical records. Dkt. #7, p. 686.

A supplemental telephone hearing was held on April 26, 2021. Dkt. #7, pp. 586-643. Plaintiff was again represented by counsel. She testified that she was 5' 5" tall and weighed 249 pounds. Dkt. #7, p. 598.

The ALJ then heard from an impartial medical expert, Dr. Julian Meland. Dkt. #7, p. 613. Dr. Meland testified that he had reviewed the medical evidence of record and found that plaintiff has degenerative disc disease at the cervical level; lower back pain with degenerative disease at the lumbar level, with evidence of radiculopathy; and spondylosis. Dkt. #7, p. 614. She also has bilateral hip pain. *Id.*

Dr. Meland testified that plaintiff also has coagulopathy; she developed a post-partum deep vein thrombosis in 2002; and she has a history of pulmonary embolism. Dkt. #7, p. 614. Plaintiff was placed on anticoagulant medications and had an inferior vena cava filter inserted to prevent further pulmonary embolisms. Dkt. #7, p. 615.

Dr. Meland testified that plaintiff also has a history of kidney stones; is a smoker and has mild COPD; and she is obese. Dkt. #7, p. 615.

As to limitations, Dr. Meland testified that plaintiff could lift or carry no more than 10 pounds; she could sit for an hour or 90 minutes but then would need to stand or walk for 20-30 minutes due to her history of DVT; and she may be off-task for about 10% of the time. Dkt. #7, pp. 616-617. Dr. Meland testified that plaintiff could sit for five hours and walk for two to three hours. Dkt. #7, p. 617. However, he later changed this opinion and testified that he thought plaintiff could sit for four hours maximum in a workday. Dkt. #7, pp. 624-625.[4]

Dr. Meland testified that, although he did not see any mention in the medical records of a need for a cane, he would recommend one due to plaintiff's abnormal gait and radiculopathy. Dkt. #7, p. 618. He also testified that plaintiff could reach generally frequently and overhead only occasionally. Dkt. #7, p. 618. She could also perform handling, fingering, and feeling frequently; operate foot controls occasionally; climb a

---

[4] The transcript attributes these statements to a VE, but that appears to be an error as this testimony came from Dr. Meland; the VE did not begin testifying until later in the hearing.

flight of stairs; but she could not climb scaffolds or balance, stoop, kneel, crouch, or crawl. Dkt. #7, pp. 618-619.

Finally, Dr. Meland testified that he would recommend that plaintiff not be exposed to unprotected heights or moving mechanical parts, and—due to her COPD— she should avoid dust, odors, fumes, extreme cold, and extreme heat. Dkt. #7, p. 619. Due to her history of DVT, she should elevate her legs during breaks. Dkt. #7, p. 620.

The ALJ then heard from Victor Alberigi, an impartial VE. Dkt. #7, p. 625. The ALJ asked the VE to consider a person with plaintiff's age, education, and background who can sit for up to five hours; stand and walk for three hours; sit for a maximum of 90 minutes and then stand up for 10 minutes; and walk for at least 30 minutes. Dkt. #7, p. 627.

Further, the ALJ asked the VE to assume that the person cannot work overhead; can lift or carry no more than 10 pounds; can never climb a rope, ladder or scaffolding; can never balance on narrow, slippery, or moving surfaces; can occasionally stoop, crouch, kneel, crawl, and climb stairs or ramps; needs to avoid unprotected heights or open waters; and can tolerate occasional exposure to extreme cold and heat, wetness, humidity, and airborne irritants. Dkt. #7, p. 627.

The VE testified that, under this hypothetical, the person would be able to perform plaintiff's past work as a companion, telemarketer, and night auditor. Dkt. #7,

p. 628. As to the telemarketer job, the VE noted that the person would be able to stand at their workstation and move around within a few feet. Dkt. #7, pp. 628-632. However, plaintiff interjected that her past position required that she be on the computer constantly, so she could not really leave the desk. Dkt. #7, p. 632. The VE then agreed that, for either the telemarketer or night auditor job, it would be difficult, if not impossible, for a person to perform the job effectively if they were leaving their workstation. *Id.*  He also questioned whether it would be possible in the companion job. Dkt. #7, p. 635.

On April 29, 2021, plaintiff amended her alleged onset date to January 1, 2016. Dkt. #7, p. 943.

The ALJ issued an unfavorable decision on December 7, 2021, Dkt. #7, pp. 560-585, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d

Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers

in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity January 1, 2016, the alleged onset date, and her date last insured was December 31, 2019; (2) plaintiff had the following severe impairments: vascular insufficiency; history of DVT; phlebitis; lumbar degenerative disc disease; obesity; and status-post pulmonary embolism; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform sedentary work[5] except that she is restricted to: sitting for six hours, for a maximum of 90 minutes at a time; standing and walking for a total of three hours; after 90 minutes of sitting, she needs to change position to standing and walking for up to 30 minutes without leaving her workstation; she cannot work overhead; she can lift and carry 10 pounds; she cannot climb a rope, ladder or scaffold; she can never balance on a narrow, slippery, or moving surface; she can occasionally stoop, crouch, climb stairs or ramps, kneel, and crawl; she needs to avoid hazards, such as unprotected heights or open waters; and she can tolerate only occasional exposure to extreme cold, extreme heat, wetness, humidity, and airborne irritants; (5) plaintiff was capable of performing past relevant work as a night auditor, telemarketer, and companion,

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

and she was not, therefore, disabled within the meaning of the SSA. Dkt. #7, pp. 565-577.

For claims filed before March 27, 2017, the SSA regulations provide that, unless the ALJ affords controlling weight to a treating source's medical opinion, the ALJ is required to consider and weigh all medical opinions of record, whether those opinions are from acceptable medical sources, other medical sources or non-medical sources, with consideration of the following factors for determining the appropriate weight to afford such opinions: (1) the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the SSA's attention that tend to support or contradict the opinion. *Saxon v. Astrue*, 781 F. Supp.2d 92, 103-04 (N.D.N.Y. 2011); *See* 20 C.F.R. § 404.1527 (c). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that consideration of the treatment relationship is replaced with consideration of whether the non-treating source examined the plaintiff. *White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019). So long as the ALJ's rationale is clear, however, the ALJ need not address each factor individually. *See Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013).

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in a decision, the

ALJ is entitled to weigh all the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). An ALJ need not reconcile every conflict in the record but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support the ALJ's  conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to his application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006). Thus, when an ALJ chooses to adopt only portions of a medical opinion, the ALJ must explain his decision to reject the remaining portions. *Tanya Y. v. Comm'r of Soc. Sec.*, 20-CV-712, 2022 WL 1115458, at *2 (W.D.N.Y. Apr. 14, 2022).

### Challenge to the ALJ's Decision

Plaintiff makes two challenges to the ALJ's decision: (1) she erred by failing to properly evaluate the medical opinions of record; and (2) she erred by failing to provide an adequate discussion on whether a cane was medically necessary and whether the use of a cane should have been incorporated into the RFC finding. Dkt. #8-1, p. 1.[6]

---

[6] Notably, plaintiff does not now challenge the ALJ's assessment of Dr. Hom's opinion, which was the basis for this Court's remand in 2020.

## The ALJ's Formulation of Plaintiff's RFC

A review of the process by which the ALJ determined plaintiff's RFC will be helpful in evaluating plaintiff's arguments.

After reviewing evidence of plaintiff's impairments as set forth in her 2017 decision, the ALJ began a lengthy discussion explaining why she concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. Dkt. #7, pp. 569-570.

### *Plaintiff's Daily Activities*

The ALJ first reviewed plaintiff's daily activities as she described them in the function report she submitted on December 16, 2014. Dkt. #7, p. 570 (citing Exh. B3E). The ALJ noted that plaintiff reported that she helped her children get ready for school; did light housework with intermittent rest; cooked dinner; was able to complete personal care activities such as bathing and dressing; vacuumed with breaks; loaded the dishwasher; did light dusting; put clothes away; was able to drive and go out alone; went shopping in stores for groceries and other items; watched television; played computer games; walked; read; and was able to reach, use her hands, see, hear, and talk. *Id.* She reported having no problems paying attention or following instructions. *Id.*

The ALJ also noted that during a January 2015 consultative examination, plaintiff reported that she performed childcare daily; did laundry and shopping once a

week; showered, bathed, and dressed daily; watched television; and read. Dkt. #7, p. 570 (citing Exh. B7F).

### *Medical Records*

The ALJ next reviewed plaintiff's medical records dating back to 2013. She noted plaintiff's history of DVT, venous insufficiency, obesity, and lower extremity pain, but she also noted that plaintiff's treatment regimen was largely conservative. Dkt. #7, p. 570. The ALJ further noted that plaintiff's treating physicians had consistently advised her to stop smoking, lose weight, and increase her activity level. *Id.*

Moving to the period after January 1, 2016, the alleged onset date, the ALJ discussed records from plaintiff's treating physician, Dr. Katherine Eisenberg, and other providers at North Ponds Family Medicine and Maternity Care. Dkt. #7, p. 570 (citing Exh. 9F). The ALJ noted that in records of an office visit on November 22, 2016, Dr. Eisenberg stated that plaintiff was tolerating Eliquis—an anticoagulation medication—well, although plaintiff was not remembering to take it consistently as prescribed. Dkt. #7, p. 484.  Dr. Eisenberg also noted that plaintiff was still smoking one-half to a whole pack of cigarettes daily. *Id.*

The ALJ also discussed Dr. Eisenberg's treating records from 2017 to 2021. *Id.* (citing Exhs. B19F and B22F).  She observed that these records reflected that plaintiff's "condition was stable on long-term Eliquis with no changes made to her treatment regimen." *Id.*

For example, Dr. Neil Robert Scheier, another physician in Dr. Eisenberg's office, examined plaintiff on May 2, 2019 for a complaint of kidney stones. Dkt. #7, p. 1531. Dr. Scheier noted that plaintiff reported: "She is eating well and functioning well. She drives for Grub Hub." *Id.* Dr. Scheier also wrote that plaintiff was overweight but "otherwise well appearing, undistressed, cooperative throughout," and he stated, "No evidence for true pain." Dkt. #7, pp. 1531-1532.

On October 21, 2020, plaintiff had a medication follow-up appointment with Dr. Eisenberg's office and was examined by Nurse Practitioner Kelsey Hynes. Dkt. #7, pp. 1534-1535. Hynes noted that plaintiff stated that she was taking her medications daily and that the Flexeril prescribed for her lower back pain on an as-needed basis was "working well." Dkt. #7, p. 1534. Under "Assessment and Plan," Hynes stated: "Per patient, stable on PRN Flexeril and will make no changes today." Dkt. #7, p. 1535. Similarly, as to plaintiff's venous thromboembolism," Hynes wrote: "Stable on daily Eliquis- no medication changes made today." *Id.*

The ALJ next recited excerpts from her 2017 decision wherein she reviewed plaintiff's diagnosis of degenerative disc disease with low back pain. Dkt. #7, p. 571. These medical records generally reflected that, while plaintiff reported low back pain, she stopped attending physical therapy after one visit; she stopped attending pain management by November 2014, although she continued taking Vicodin; and she was advised to lose weight, attend physical therapy, and stop smoking. *Id.*

Further, physical examinations documented in these records reflected that while plaintiff had a limping gait, some tenderness, and slightly limited lumbar extension, she also had normal balance, normal sensation/reflexes, full strength with no evidence of atrophy, and an otherwise normal back range of motion. *Id.*

The ALJ then addressed a consultative medical examination conducted by Dr. Harbinder Toor on April 9, 2021. Dr. Toor acknowledged plaintiff's history of blood clots and lower back pain, which she rated at 10/10 with radiation in her left leg. Dkt. #7, p. 1662. Dr. Toor noted that, on physical examination, plaintiff was in no acute distress; had a normal but slightly painful gait; she could squat to 50% of full; she could walk on heels and toes with difficulty; her stance was normal; and she had reduced lumbar range of motion and negative straight leg raising. Dkt. #7, pp. 1663-1664.  He also noted that plaintiff used no assistive device; she had no sensory deficits; she had 5/5 strength in upper and lower extremities; and she had mild pitting-type edema in her left lower leg and foot. *Id.*

### Opinion Evidence

Against this backdrop, the ALJ turned to the opinion evidence. Dkt. #7, p. 572. Because plaintiff challenges only the ALJ's analysis of the 2021 opinions of Drs. Eisenberg, Toor, and Meland, the Court will describe the other opinions only briefly.

The ALJ began with Dr. Toor's opinion from the consultative physical examination he performed of plaintiff on January 29, 2015. Dkt. #7, pp.477-480. Dr. Toor opined that plaintiff had "moderate to severe" limitations in standing, walking, bending, and lifting, as well as problems with balance. Dkt. #7, p. 480. The ALJ assigned this opinion "partial weight," but acknowledged that Dr. Toor had examined plaintiff and that his assessment supported limiting plaintiff to sedentary work with additional restrictions. Dkt. #7, p. 572.

The ALJ also gave "partial weight" to Dr. Eisenberg's 2017 medical source statement. Dkt. #7, p. 572. The ALJ discussed this opinion at length, concluding that some of the proposed limitations were prudent, such as in climbing and sitting, but that the others were extreme and inconsistent with plaintiff's medical records, treatment history, and daily activities. *Id.*

The ALJ next acknowledged records from the Monroe County of Human Resources from 2012 to 2015. Dkt. #7, p. 573. However, the ALJ stated that these forms—which were intended to assess plaintiff's employability—were a poor fit in the Social Security disability context because they used different standards. *Id.* Nonetheless, the ALJ stated that she considered the information. The ALJ also assigned "minimal weight" to the opinion of a county examiner because it was inconsistent with plaintiff's level of, and response to, treatment, as well as her activities. *Id.*

The ALJ then considered the multiple opinions from Dr. Hom, discussing them at length. Dkt. #7, pp. 573-574. In sum, the ALJ found numerous flaws in the foundation of Dr. Hom's opinions, including that they were not supported by the medical records; not always based on contemporaneous examinations of plaintiff; not consistent with plaintiff's activities; and inconsistent with Dr. Bajor's opinions. The ALJ thus assigned Dr. Hom's opinions "little weight." Dkt. #7, p. 574. Again, plaintiff does not challenge this aspect of the ALJ's decision.

Next, the ALJ considered a medical source statement provided by Dr. Eisenberg dated January 29, 2021. Dkt. #7, pp. 1554-1558. Dr Eisenberg opined that plaintiff had constant low back pain; her pain would interfere with her attention and concentration for 20-99% of a workday; she could walk zero city blocks without rest or severe pain; she could sit for no more than 20 minutes and stand for no more than 10 minutes; she could sit and stand/walk for a total of less than 2 hours in an 8-hour work day; she would need to walk around every 10 minutes for 5 minutes each time; she would need to change positions at will from sitting, standing and walking; and she would need to take unscheduled breaks multiple times per hour. Dkt. #7, pp.1554-1556.

Dr. Eisenberg also opined that plaintiff must use a cane or other assistive device while standing or walking; that she could occasionally lift up to 10 pounds; that her condition would produce "good days" and "bad days;" and she would likely be absent from work about four days a month. Dkt. #7, pp. 1556-1557. Dr. Eisenberg concluded by

stating: "Given her limitations related to back pain[,] I do not feel she can perform most jobs." Dt. #7, p. 1558.

Referencing Dr. Eisenberg's treatment records, the ALJ found that her opinion was entitled to "little weight." Specifically, the ALJ found that plaintiff's conservative treatment and noncompliance with medical recommendations did not support the extreme limitations proposed by Dr. Eisenberg. Dkt. #7, p. 575.

The ALJ then turned to the opinion of Dr. Toor based on his April 9, 2021 examination of plaintiff. Dkt. #7, pp.1662-1665. Dr. Toor opined that plaintiff had "moderate" limitations sitting for a long time; "mild to moderate" limitations standing, walking, bending, lifting, and carrying; "moderate to marked" limitations climbing stairs, ramps, and scaffolding; "moderate" limitations stooping or kneeling; "moderate" limitations sitting and driving; and "moderate to marked" limitations climbing and walking up stairs. Dkt. #7, p. 1664.

Dr. Toor noted, however, that plaintiff had no difficulty with balance and used no assistive device. Dkt. #7, pp. 1663-1664. Dr. Toor also completed a medical source statement of ability to do work-related activities (physical) in which he opined, *inter alia*, that plaintiff did not require the use of a cane to ambulate. Dkt. #, p. 1667.

The ALJ gave "partial weight" to Dr. Toor's opinion, reasoning that although the qualitative terms he used were not well defined, he did examine plaintiff and his

opinion was supported by objective examination findings and observations; he is a medical expert; and he is familiar with functional assessments. Dkt. #7, p. 575.[7]

      The ALJ next gave "great weight" to the opinion of Dr. Bajor, who testified at the January 14, 2021 hearing. Dkt. #7, p. 575. As noted, Dr. Bajor testified that plaintiff would be limited to sedentary work with postural limitations. *Id.* The ALJ noted that Dr. Bajor is a medical expert; she supported her testimony with specific citations to the record; and her opinion was consistent with the medical evidence later obtained. *Id.*

      Finally, the ALJ gave "little weight" to certain aspects of the opinion of Dr. Meland, finding them "problematic." Dkt. #7, p. 575. The ALJ noted that Dr. Meland changed his testimony in several respects and opined that plaintiff would need a cane even though the medical records did not mention a cane. *Id.* The ALJ also noted that Dr. Meland's emphasis on plaintiff needing to walk for extended periods was not supported by the record which, in fact, reflected that plaintiff's DVT and venous insufficiency had long been stabilized. Dkt. #7, p. 576.

      Having reviewed this extensive record, the ALJ concluded:

> In sum, the claimant's complaints and alleged limitations are out of proportion to the objective findings, to the nature and degree of treatment provided, to the claimant's own approach to treatment and her non-compliance or follow through, and to her acknowledged activities. While she is limited to the lowest level of exertion with significant additional restrictions, no additional limitations are supported here.

---

[7] The Court omits discussion of the opinion of a mental consultative examiner, Dkt. #7, p. 575, because plaintiff's mental functioning is not at issue in this matter.

*Id.*

### Plaintiff's Arguments

#### Dr. Eisenberg's 2021 Opinion

Plaintiff first argues that the ALJ failed to give "good reasons" for assigning "little weight" to Dr. Eisenberg's January 2021 opinion. The Court disagrees.

"Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" *Alissa H. v. Comm'r of Soc. Sec.*, 6:23-CV-06064-EAW, 2024 WL 1250228, at *4 (W.D.N.Y. Mar. 25, 2024) (citation and internal quotation marks omitted).

Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she 'must consider various factors to determine how much weight to give to the opinion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). "If the ALJ neglects to expressly apply the requisite factors, it is considered a procedural error." *Id.* (citations and internal quotation marks omitted). "However, such error is harmless if a searching review of the record confirms that the substance of the treating physician rule was not traversed." *Id.*

"Whatever weight the ALJ assigns to the treating physician's opinion, he must give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." *Id.*

Here, there is substantial evidence supporting the ALJ's finding that Dr. Eisenberg's 2021 opinion was inconsistent with the longitudinal treatment records and thus not entitled to controlling weight.

As discussed above, before evaluating the medical opinion evidence, the ALJ reviewed plaintiff's treatment records, including those from Dr. Eisenberg and other medical providers in her office from 2015 to 2021. Dkt. #7, p. 570 (citing Exhs. B9F and B22F). In her assessment of Dr. Eisenberg's 2021 opinion, the ALJ specifically referenced that evidence, which reflected that, during and near the period in question,[8] plaintiff's low back pain and DVT/veinous insufficiency were stable on medications and more aggressive treatment had not been recommended. Dkt. #7, p. 575 (citing Exh. B22F).

As noted above, in May 2019—during the insured period—plaintiff reported to another physician in Dr. Eisenberg's office that she was eating and functioning well and driving for Grub Hub. Dkt. #7, p. 1531. And in October 2020—just three months before Dr. Eisenberg rendered her 2021 opinion—plaintiff reported to a nurse practitioner

_____

[8] Neither the ALJ nor the parties acknowledge in their analyses that plaintiff's date last insured was December 31, 2019, Dkt. #7, p. 565, and much of the evidence, including medical records and opinions, is from after that date by a year or more. Nonetheless, evidence from both before and after the insured period may be relevant to the assessment of plaintiff's claim. *Douglas G. K. v. Comm'r of Soc. Sec.*, CASE # 19-cv-06901, 2021 WL 9626219, at *5 (W.D.N.Y. Mar. 30, 2021).

in Dr. Eisenberg's office that the medicine for her back pain was "working well" and that she was taking her Eliquis as prescribed. Dkt. #7, p. 1534. The nurse practitioner thus assessed plaintiff's conditions as "stable" and made no changes to her medications. Dkt. #7, p. 1535.

Moreover, even on January 29, 2021—the date plaintiff saw Dr. Eisenberg and painted a dramatically different picture from the one she had described to the nurse practitioner three months earlier—Dr. Eisenberg still made "no changes to management plan today." Dkt. #7, pp. 1580-1581.[9]

The ALJ's assessment of Dr. Eisenberg's 2021 opinion thus incorporated her previous detailed analysis of the relevant treatment records. Plaintiff's attempt to characterize this assessment as cursory or deficient therefore fails because it is well established that an ALJ's decision must be read as a whole. *Alissa H. v. Comm'r of Soc. Sec.*, 6:23-CV-06064, 2024 WL 1250228, at *8 (W.D.N.Y. Mar. 25, 2024).

Moreover, the ALJ properly relied on the treatment records to find that the extreme limitations proposed by Dr. Eisenberg were unsupported. *Id.* at *7 (ALJ "appropriately identified information contained in the treatment records that did not fully support the limitations" proposed by plaintiff's treatment providers). *See also DePriest v. Comm'r of Soc. Sec.*, 448 F. Supp.3d 279, 284 (W.D.N.Y. 2020) ("An ALJ need not give

---

[9] It was also at this visit that plaintiff requested "disability paperwork" from Dr. Eisenberg, which Dr. Eisenberg stated she completed. Dkt. #7, p. 1581. Dr. Eisenberg's medical source statement bears the same date.

controlling weight to a treating physician's opinion where it is inconsistent with his own treatment records.") (citation omitted).

The Court approved similar reliance on treatment records in *Melissa T.F. v. Comm'r of Soc. Sec.*, 1:22-cv-04718-MKV-GRJ, 2023 WL 9603882 (S.D.N.Y. Dec. 11, 2023):

> Treatment notes from prior to the date last insured occasionally document complaints of headaches but are not consistent with claims of disabling limitations. . . . Rather, they describe Plaintiff as taking Excedrin "as needed" and experiencing relief from that over-the-counter treatment. . . . The ALJ underscored the absence of evidence of the sort of treatment one would expect if Plaintiff were experiencing disabling pain and limitation during the period at issue. Instead, the ALJ reasonably read the record as demonstrating that Plaintiff's migraines were reasonably well controlled during the period at issue.
>
> This was sufficient to sustain the ALJ's conclusion under the deferential standard of review here.

*Id.* at *5 (citation omitted). The Court also noted that retrospective opinions, such as Dr. Eisenberg's 2021 opinion, which are "unsupported by, or inconsistent with, the contemporaneous evidence, will not support a disability finding." Such is the case here.

Plaintiff's arguments regarding conservative treatment and plaintiff's noncompliance with treatment recommendations also do not support remand.

The ALJ simply observed, as one of several reasons for affording little weight to Dr. Eisenberg's 2021 opinion, that "treatment is not at the level that supports the extreme opinion offered." Dkt. #7, p. 575. This is permissible. *Melissa T. F.*, 2023 WL

9603882, at *5. *See also Christopher P. v. Comm'r of Soc. Sec.*, 6:21-cv-06108 (JGW), CASE NO 6:21-cv-06108 (JGW), 2024 WL 2831839, at *5 (W.D.N.Y. June 4, 2024) (noting that plaintiff's largely conservative treatment was inconsistent with allegations of disabling pain).

Similarly, the ALJ reasonably considered plaintiff's noncompliance with recommendations from her medical providers as undermining her claim of disability. While plaintiff focuses on her discontinuing the use of compression stockings due to pain, which the ALJ did not specifically discuss, it is clear from the ALJ's overall discussion that she considered other issues more serious: plaintiff's repeated failure to comply with her treating providers' advice to stop smoking, lose weight, and increase her activity levels. Dkt. #7, pp. 570-571. The ALJ also noted that plaintiff attended physical therapy for only one session because she did not like it, and that she stopped going to pain management treatment. Dkt. #7, p. 571.

This evidence supports the ALJ's conclusion that plaintiff's "repeated non-compliance with treatment undermined her allegation of disability." *Michelle K. v. Comm'r of Soc. Sec.*, Case # 1:21-v-1295-DB, 2024 WL 1856857, at *13 (W.D.N.Y. April 29, 2024) (citing SSR 16-3p, 2017 WL 5180304, at *9, which explains "that if the individual fails to follow prescribed treatment that might improve symptoms, the ALJ may find that the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence in the record").

Third, plaintiff argues that the ALJ failed to explain the consistency of Dr. Eisenberg's 2021 opinion with the opinions of Drs. Meland and Toor. This is a red herring because any consistency in these three opinions rests on opined limitations that the ALJ expressly found to be unsupported by other substantial evidence, including treatment records and plaintiff's activities. Dkt. #7, pp. 574-575. Indeed, as discussed above, the ALJ afforded Dr. Toor's 2021 opinion "partial weight" and gave "little weight" to Dr. Meland's opinion.

The ALJ "must assess an opinion's consistency with the record as a whole," and "the Court just must be able to follow the ALJ's reasoning in a manner to sufficiently understand the basis for the opinion." *Alissa H.*, 2024 WL 1250228, at *7 (citations omitted). The ALJ met this obligation with respect to her assessment of Dr. Eisenberg's 2021 opinion, and plaintiff's "arguments essentially amount to an invitation for the Court to reweigh the evidence." *Id.* at *8 (citation omitted).[10]

### Dr. Toor's 2021 Opinion

Plaintiff next argues that the ALJ mischaracterized Dr. Toor's 2021 opinion and medical source statement opining as to specific functional limitations. Dkt. #8-1, pp. 15-17.

The ALJ noted that the terms used by Dr. Toor to describe plaintiff's opined limitations ("mild," "moderate") were "not well defined," but she nonetheless afforded

---

[10] The issue of whether plaintiff needed a cane will be addressed below in the context of Dr. Meland's opinion.

"partial weight" to his opinion. Dkt. #7, p. 575. A "partial weight" assessment does not amount to rejection of the opinion. *DePriest*, 448 F. Supp.3d at 286 (citation omitted).

Although the ALJ did not discuss the stricter limitations to which Dr. Toor opined in the check box portion of his medical source statement, the entirety of the ALJ's reasoning and the resulting RFC makes it clear that she found such extreme limitations to be unsupported by the record.

First, the ALJ reviewed Dr. Toor's 2015 opinion, to which she also assigned "partial weight." Dkt. #7, p. 572.  She noted that his opinion that plaintiff had "moderate" limitations in standing and "moderate to severe" limitations in standing, walking, bending, and lifting" supported limiting plaintiff to sedentary work with some additional restrictions. Dkt. #7, p. 572.

In 2021, Dr. Toor again opined that plaintiff had a "moderate" limitation in sitting. Dkt. #7, p. 1664. However, in 2021, Dr. Toor's assessment of plaintiff's limitations in standing, walking, bending, and lifting" was only "mild to moderate"—less restrictive than his 2015 opinion. *Id.*

Where the opinions from a medical source vary throughout the relevant time period, "it was within the ALJ's discretion to resolve the conflict." *DePriest*, 448 F. Supp.3d at 286.

Thus, the Court concludes that the ALJ did not "mischaracterize" Dr. Toor's 2021 opinion, she simply chose not to accept the exact limitations he proposed. This is not grounds for remand. *See James K. W. v. Comm'r of Soc. Sec.*, Case # 1:21-cv-864-DB, 2024 WL 1622019, at *7 (W.D.N.Y. April 15, 2024) (noting that the "ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in [his] decision, because the ALJ is entitled to weigh all the evidence available to make an RFC finding that [i]s consistent with the record as a whole") (citations and internal quotation marks omitted).

### Dr. Meland's Opinion and Use of a Cane

Plaintiff's final challenge to the ALJ's treatment of the medical opinions is that she rejected Dr. Meland's opinion that plaintiff would need to use a cane. Dkt. #8-1, p. 17. This argument is without merit.

The ALJ explained that she rejected this opinion because—as Dr. Meland conceded during his testimony—there was no such recommendation in plaintiff's treating medical records. Dkt. #7, p. 575. And while Dr. Eisenberg's 2021 opinion also stated that plaintiff would need a cane, the ALJ explained why she found her overall opinion to be unsupported by the evidence, as discussed above.

Importantly, in Dr. Eisenberg's notes of plaintiff's office visit on January 29, 2021—the same day that she completed her treating source medical statement—Dr. Eisenberg makes no mention of plaintiff needing a cane. Dkt. #7, pp. 1580-1581. To the

contrary, Dr. Eisenberg encouraged plaintiff to "remain active," "be more active," and she made "no changes" to plaintiff's management plan. Dkt. #7, p. 1726.

Further, when Dr. Toor completed his physical examination of plaintiff on April 9, 2021, he noted that she used no assistive device, Dkt. #7, p. 1663, and in the accompanying check box form, he responded "no" to the question: "Does the individual require the use of a cane to ambulate?" Dkt. #7, p. 1667.

Thus, the ALJ did not err in rejecting Drs. Meland's and Eisenberg's opinions that plaintiff needed to use a cane.

Finally, plaintiff's argument that the ALJ erred by failing to provide an "adequate" discussion about whether plaintiff needed a cane is without merit.

"Pursuant to Social Security Ruling ('SSR') 96-6p, t[o] find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." *Nichol v. Comm'r of Soc. Sec.*, 22-cv-5003 (JGK) (JW), 2023 WL 5751523, at *10 (S.D.N.Y. Aug. 22, 2023) (citation and internal quotation marks omitted). "Accordingly, whether the ALJ's determination lacked substantial evidence centers around the existence of persuasive medical documentation" establishing that plaintiff needed a cane and under what circumstances. *Id.*

As noted above, the ALJ discussed Dr. Meland's opinion—formed apparently out of whole cloth—that he would recommend that plaintiff use a cane, and she reasonably explained why that opinion had no basis in the medical records. Dkt. #7, p. 575. Further, as discussed above, the record is devoid of evidence that a cane was medically necessary for plaintiff to walk. Remand on this basis is thus unwarranted. *Id.*

The Court thus finds that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #9) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:      Buffalo, New York
            June 18, 2024

                         s/ H. Kenneth Schroeder, Jr.
                        **H. KENNETH SCHROEDER, JR.**
                        **United States Magistrate Judge**